**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**April 21, 2020**

# In the Court of Appeals of Georgia

A20A0754. MITCHELL v. THE STATE.

COLVIN, Judge.

Following a jury trial,[1] Tracy Renee Mitchell was convicted of two counts of first-degree vehicular homicide (Cts. 3 & 5), as well as one count each of hit-and-run (Ct. 4), reckless driving (Ct. 6), and duty upon striking an unattended vehicle (Ct. 7).[2] Mitchell appeals from the trial court's denial of her motion for new trial as amended, contending that 1) the felony sentence for first-degree vehicular homicide is void because the indictment charged the lesser misdemeanor offense of second-degree

---

[1] On July 13, 2017, the State issued an indictment charging Mitchell with multiple offenses based upon the car accident at issue. On February 22, 2018, the State re-indicted Mitchell of the offenses. The first indictment was nolle prossed and the trial was conducted under the re-indicted case.

[2] Mitchell was acquitted of one count of first degree vehicular homicide (Ct. 1) and one count of driving under the influence (Ct. 2).

vehicular homicide and 2) the trial court erred in failing to give her requested charge on the sole defense of accident.

Viewed in the light most favorable to the jury's verdict,[3] the trial evidence shows that Mitchell and the female victim were friends. On the evening of November 10, 2015, Mitchell and the victim went to a local restaurant and had dinner and drinks. They remained at the restaurant for several hours and left as the restaurant was closing at 11:00 p.m. As they walked toward the restaurant's parking deck, a restaurant employee observed Mitchell attempt to embrace the victim. The victim rejected Mitchell's attempted embrace.

A few hours later, at approximately 1:00 a.m. on November 11, 2015, Mitchell drove the victim home. A video surveillance camera operated by the City of Atlanta was posted near the victim's apartment and captured Mitchell's actions at that time. The videotape depicting the incident was admitted into evidence without objection and was played for the jury at trial. The videotape showed that following their arrival, the victim remained in Mitchell's car for several minutes. At approximately 1:11 a.m., as the victim was exiting Mitchell's car, Mitchell suddenly accelerated the car in reverse. In doing so, Mitchell's car slammed into an adjacent truck that was parked

_____

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

and unoccupied. Mitchell then drove the car forward and turned the car around in the opposite direction to leave the scene. During this maneuver, the victim was thrown from Mitchell's car and was struck by the car as she lay in the roadway.

After Mitchell's car came to a rest, Mitchell exited her car and stood over the victim's body. Mitchell then returned to her car and fled the scene.

Thereafter, at approximately 1:30 a.m., the owner of a restaurant near the scene observed the deceased victim's body laying in the roadway and called 911. Officers with the Atlanta Police Department responded, secured the scene, and collected evidence related to the incident. The responding officers observed the victim's body lying in the roadway, with her purse and cell phone next to her. At the scene, the responding officers also collected two plastic car parts bearing serial numbers that the investigation later revealed as coming from Mitchell's car.

Based on information obtained during the investigation, the investigating officers obtained an arrest warrant for Mitchell and a search warrant for her car. Mitchell, accompanied by her trial counsel, appeared at police headquarters and delivered her car for the officers' inspection on the afternoon of November 11, 2015, approximately 14 hours after the incident.

As the investigation continued, the officers searched Mitchell's car, which had damage to the bumper and the front passenger side consistent with striking the unoccupied truck and the victim. On the frame underneath Mitchell's car, the officers found a blood specimen that was confirmed as the victim's after testing at the GBI crime lab. The officers also executed a search warrant to obtain Mitchell's cell phone records, which revealed that she did not attempt to call 911 after the incident. The medical examiner's autopsy confirmed that the cause of the victim's death was blunt force trauma to her head, torso, and pelvis, which was consistent with being struck by a motor vehicle.

Mitchell was charged with multiple offenses related to the incident. At the conclusion of the jury trial, Mitchell was found guilty of two counts of first-degree vehicular homicide and one count each of hit and run, reckless driving, and duty upon striking an unattended vehicle.[4] The trial court imposed a felony sentence of 15 years to serve in confinement for the first-degree vehicular homicide charge in Count 3; 12

_____

[4] Mitchell's enumerations of error on appeal do not challenge the sufficiency of the evidence supporting the jury's verdict. We note that the evidence indeed was sufficient to sustain the conviction. See OCGA §§ 40-6-270 (b) (hit and run); 40-6-271 (duty upon striking an unattended vehicle); 40-6-390 (a) (reckless driving); 40-6-393 (b) (first-degree vehicular homicide). See generally *Jackson*, 443 U. S. at 318-319 (III) (B).

4

months for the duty upon striking an unattended vehicle in Count 7, to be served concurrently with the vehicular homicide charge in Count 3; and merged the remainder of the charges. After the trial court denied Mitchell's motion for a new trial, the instant appeal ensued.

1. Mitchell argues that the 15-year felony sentence imposed for the first-degree vehicular homicide offense (Count 3) is void because the indictment charged the lesser misdemeanor offense of second-degree vehicular homicide.[5] Specifically, Mitchell asserts that the indictment failed to allege the element of knowledge for the predicate offense of hit-and-run under OCGA § 40-6-270 (b), as required for first-degree vehicular homicide under OCGA § 40-6-393 (b). We discern no error.

OCGA § 40-6-393 (b) provides that

[a]ny driver of a motor vehicle who, *without malice aforethought*, causes an accident which causes the death of another person and leaves the scene of the accident in violation of subsection (b) of Code Section 40-6-270 [hit-and-run] commits the offense of homicide by vehicle in

[5] Mitchell's claim of a void sentence was not raised and ruled upon by the trial court below. "Although this issue of a void sentence was raised by [Mitchell] for the first time on appeal, it is preserved for our review as Georgia law recognizes that a sentence which is not allowed by law is void and its illegality may not be waived." (Citation and punctuation omitted.) *Philmore v. State*, 300 Ga. 558, 558 (796 SE2d 652) (2017).

5

the first degree and, upon conviction thereof, shall be punished by imprisonment for not less than three years nor more than 15 years.

(Punctuation omitted; emphasis supplied.) Here, Count 3 of the indictment charged Mitchell

with the offense of **HOMICIDE BY VEHICLE IN THE FIRST DEGREE** in violation of [OCGA] 40-6-393 (b) for the said accused person, in the County of DeKalb and State of Georgia, on or about the 11th day of November, 2015, while driving a motor vehicle, to wit: a 2013 Lexus RX350, on Arizona Avenue, did, without malice aforethought, cause an accident which caused the death of [the victim], a human being, through a violation of [OCGA] § 40-6-270 (b), Hit and Run, as alleged on Count Four[.]

Contrary to Mitchell's argument, an indictment is sufficient when it "tracks the language of the applicable provision of the vehicular homicide statute, OCGA § 40-6-393 (b), which itself cites OCGA § 40-6-270 (b) without setting out all of the elements of hit and run, and it describes the circumstances of the crime." *State v. Mondor*, 306 Ga. 338, 344 (1), n. 5 (830 SE2d 206) (2019). See also *Duggan v. State*, 225 Ga. App. 291, 297 (8) (483 SE2d 373) (1997) (concluding that the indictment was sufficient to charge defendant with felony vehicular homicide when it directly

6

tracked the language of OCGA§ 40-6-393 (a)). Because Count 3 of the indictment tracked the statutory language of OCGA § 40-6-393 (b), with a cite to the underlying hit-and-run statute of OCGA § 40-6-270 (b) and description of the circumstances surrounding the vehicular homicide incident, it was sufficient to set forth the first-degree vehicular homicide offense. *Mondor*, 306 Ga. at 344 (1), n. 5. And because the trial court's imposition of a 15-year felony sentence fell within the statutory range prescribed by OCGA § 40-6-393 (b), it was proper. See *Bell v. State*, 293 Ga. 683, 687 (4) (748 SE2d 382) (2013) (trial court properly imposed a felony sentence when the evidence was sufficient for the jury to find defendant guilty of first-degree vehicular homicide). See generally *Reynolds v. State*, 272 Ga. App. 91, 94 (2) (611 SE2d 750) (2005) ("A sentence is void if the court imposes punishment that the law does not allow. When the sentence imposed falls within the statutory range of punishment, the sentence is not void[.]") (citations and punctuation omitted).

2. Mitchell further argues that the trial court erred in failing to give her requested charge on the sole defense of accident. She claims that the accident defense applied to the first-degree vehicular homicide charge in Count 5 and the reckless driving charge in Count 6 of the indictment. Again, no basis for reversal has been shown.

OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Notably, Mitchell's first-degree vehicular homicide and reckless driving charges are strict liability offenses defined in Chapter 6's Rules of the Road, "meaning that they can be committed without a culpable mental state." (Citations omitted.) *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012).

> [A] jury charge on the defense of accident to a strict liability traffic offense is available only where there is evidence, however slight, that the defendant did not voluntarily commit the prohibited act. . . . The defense must be based . . . on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force.

(Citations and punctuation omitted.) Id. at 9 (2) (b).

Here, Mitchell claims that she presented at least slight evidence raising the defense of accident through the testimony of her expert in accident reconstruction. Mitchell's expert testified that Mitchell had put the car in reverse and started to come out of the parking space, but that it was "unintentional" for the car to come out in the manner in which it did. Mitchell's expert nevertheless conceded that he did not know

"if there was something going on with [Mitchell's] car" at the time of the incident and that none of the reference materials he relied upon indicated any sudden acceleration problems with Mitchell's 2013 Lexus RX model.

> Although an expert may testify to his opinion, when the basis of his opinion is given and it appears that it is wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict.

(Citation and punctuation omitted.) *Cronkite v. State*, 317 Ga. App. 57, 60 (730 SE2d 694) (2012). Because there was no evidence supporting a theory that the car operated involuntarily, Mitchell's expert's suggestion was wholly speculative and was insufficient to give rise to a jury charge on accident.

But even if we were to hold otherwise, any possible error from the failure to give a jury charge on accident was harmless in this case. In deciding whether the trial court's failure to charge on accident was harmless, we must "[c]onsider[ ] the record as a whole and weigh[ ] the evidence and defenses raised by appellant at trial as we believe reasonable jurors would[.]" (Punctuation omitted.) *Noel v. State*, 297 Ga. 698, 701-702 (3) (777 SE2d 449) (2015).

9

Significantly, at trial, Mitchell's roommate testified that he was familiar with the car's maintenance and had driven the car multiple times before and after the incident. Although he had to adjust the floor mats occasionally, Mitchell's roommate never experienced any mechanical problems or sudden acceleration issues while operating the car. Mitchell had never complained to the roommate about the floor mats or any sudden acceleration issues when she operated the car. And when Mitchell subsequently had the car's body damage repaired, she and her roommate did not request to have any floor mat or sudden acceleration issues checked out or repaired. In December 2016, Mitchell sold the car after she drove an additional 24,000 miles in it following the incident. At that time, Mitchell had not reported any complaints about the car. An engineer employed by the Toyota manufacturer subsequently inspected the car on February 20, 2018. Both the engineer and Mitchell's own expert confirmed that any potential interference between the floor mats and the pedals had been remedied by the Toyota manufacturer before Mitchell's car model left the factory, as demonstrated by the fact that Mitchell's car had the updated design with a shortened gas pedal and equipment that removed any such hazard. The engineer's physical inspection, test drive, and review of the service records did not uncover any defects or sudden acceleration problems reported before or after the incident. Overall,

the trial testimony and evidence established that Mitchell's accident defense was baseless. The trial court's instructions otherwise sufficiently charged the jury as to the State's burden of proof to establish the element of intent for the charged offenses. Under these circumstances, it is highly probable the trial court's decision not to charge the jury on accident did not contribute to the jury's verdict. *Noel*, 297 Ga. at 701-702 (3).

Moreover, the vehicular homicide (Count 5) and the reckless driving (Count 6) charges at issue were merged into the first degree vehicular homicide charge in Count 3 for purposes of sentencing. Consequently, any error in failing to give the accident jury charge was harmless and has not been shown to have contributed to the outcome at trial. See *Doss v. State*, 262 Ga. 499, 500 (2) (422 SE2d 185) (1992) (trial court's failure to give a jury charge on self-defense for an underlying felony offense was harmless error because the offense was merged with a separate count for sentencing purposes).

*Judgment affirmed. Reese, P.J. and Markle, J., concur*.